## Prinz Office Equipment Co. v. Pesko
### Case No. 14155
### Summit County, (9th)
### Decided January 31, 1990
[Cite as 1 AOA 341]

*Robert C. Meeker and Mark A. Giancarli, Attorneys at Law, 277 S. Broadway, Akron, OH 44308 for Plaintiff.*

*Timothy C. Ivey and Timothy J. Ochsenhirt, Attorneys at Law, 75 E. Market St., Akron, OH 44308 for Defendants.*

BAIRD, J.

This cause came before the court upon the appeal of Prinz Office Equipment Company (Prinz) from the trial court's modification of the noncompetition agreement signed by Tamra Pesko during her employment with the appellant.

Prinz engages in the business of selling office supplies and office furniture. On October 2, 1984, Paul Prinz, owner and president, hired Pesko as a sales clerk. She was told at the October 2nd meeting that the first three months of her employment constituted a probationary period. She was also informed that at the end of the probationary period she would have to sign an "employment agreement". Pesko successfully completed the probationary period and became a full employee.

On February 26, 1985, a month after her probationary period had expired, she signed the agreement, which reads in pertinent part:

"* * *.

"In consideration of her continued employment and training by Prinz Office Equipment Company, the employee agrees that in the event of her voluntary resignation or dismissal for cause by Prinz Office Equipment Company, she will not for a period of (2) years from date of termination of employment, engage directly or indirectly for herself, or as a representative, partner, or employee of others in the same or similar business as that of Prinz Office Equipment Company in competition with Prinz Office Equipment in Akron, Ohio, and within a radius of seventy-five (75) miles of Akron, Ohio, or in any city or town in the United States where Prinz Office Equipment Company is then engaged in business, nor will she for said period of time, directly or indirectly for herself or as representative, partner, or employee of others, solicit or sell to any customers of Prinz Office Equipment Company nor for said period of time divulge any of the confidential information of the type above described to any person, firm, or corporation which is or will be a competitor of Prinz Office Equipment Company."
"* * *.

*PRINZ OFFICE EQUIPMENT CO.*
*ADDENDUM TO AGREEMENT*

"In consideration of the continuance of employment by the undersigned with the Prinz Office Equipment Co., and in consideration of the mutual desire of the Company and the undersigned that the original Agreement executed by the undersigned be modified as hereinafter set forth, said original Agreement is hereby modified as follows;

"(A) The area from which the employee shall not engage in competition shall be changed from a radius of 75 miles to an area consisting of Summit County and all adjoining Counties.

"(B) If any Court shall determine that any provision contained in the original Agreement shall not be enforcible, such Court shall have the right to modify same to comply with the law of the State of Ohio, bearing in mind the purpose of this Agreement, and any such determination or modification by the Court shall not in any manner effect (sic) the validity and enforcibility of the other provisions of the Agreement.

"(C) Except as modified by this Addendum, all of the terms and provisions of the original Agreement entered into by the undersigned shall remain in full force and effect."

Pesko remained in the employ of Prinz until February 7, 1989. At the time she began working for Costigan's Office Supply (Costigan's), a competitor of Prinz. She was hired by Costigan's to work in the customer service department, entering into the computer orders called in by customers and sales representatives.

Prinz filed a complaint against Pesko claiming she breached her employment contract and therefore should be enjoined from working for Costigan's for a period of two years as specified in the contract. Prinz then moved for a preliminary injunction. The trial court held an evidentiary hearing on the motion. At the conclusion of the hearing, the court noted that it would grant the preliminary injunction but that the proceedings would continue as a hearing for a permanent injunction.

The preliminary injunction prohibited Pesko from soliciting any customers of Prinz, from divulging any confidential information acquired while she was employed by Prinz, and from fixing prices on supplies and equipment sold to any customer of Costigan's.

On March 10, 1989, the proceedings continued with further testimony taken. The trial court found that no new consideration was given to Pesko for signing the agreement other than continued employment. It also determined that although, as written, the noncompetition agreement was unduly restrictive, some restriction was warranted. The court therefore held that the preliminary injunction would constitute its order for a permanent injunction. Prinz appeals and seeks full enforcement of the noncompetition agreement.

We affirm.

## ASSIGNMENT OF ERROR I

"The trial court erred as a matter of law when it entered a final judgment on Prinz-appellant's motion for a preliminary injunction."

Prinz claims that the trial court prevented it from fully preparing and litigating its case when the court failed to notify it that the hearing on the company's motion for a preliminary injunction was being consolidated with a hearing for a permanent injunction. The record indicates that at the end of the February 24 hearing, the trial court made the following ruling:

"* * * I will consider this both a hearing for a temporary restraining order and also the beginning of a hearing for a permanent injunction and with reference for (sic) the temporary restraining order, I'm going to adopt this language from Judge Bell's order with reference to Miss Pesko and that has to do with any information she has, customer lists, I think that's a very reasonable order under these circumstances.

"Do you have a copy of that, I think, do they provide you a copy?

"MR. MEEKER: Yeah, I think, Your Honor.

"THE COURT: And then we will continue the hearing for a permanent injunction and the Court will -- this will be a partial order. In other words, in other words, we -- this will be a partial order.

"MR. MEEKER: We'll draft it as a temporary restraining order, Your Honor; is that right?

"THE COURT: That's right."

"* * *."

Prinz did not object to this ruling. As a result of the February 24 hearing, the court issued a preliminary injunction[1].

Civ. R. 65(B) (2) permits the trial court to consolidate the hearing for a preliminary injunction with the hearing for a permanent injunction.

Further, the rule provides that, even if no consolidation takes place, the evidence admitted during the hearing for a preliminary injunction becomes part of the record for purposes of deciding the issue of a permanent injunction. The rule allows the court to consolidate the proceedings even after the commencement of hearing for the preliminary injunction.

In the present case, the trial court informed the parties at the conclusion of the February 24 hearing that it would issue a preliminary injunction on the evidence presented and that the case would then proceed forward on the issue of whether a permanent injunction should be granted. We find that the trial court gave the parties adequate notice that it was consolidating the motion for a preliminary injunction with the application for a permanent injunction. See *Turoff* v. *Stefanac*, cited *supra* at note 1.

Only the president or Prinz testified at the February 24 hearing. Prinz cannot allege prejudice on the basis that it did not know that one party's testimony elicited while the

proceedings were characterized as a hearing for a preliminary injunction would be used by the court in deciding the permanent injunction issue. Prinz certainly had sufficient time from February 24 to March 10 to prepare its case. More importantly, however, Prinz should have been aware that any evidence presented during the hearing for preliminary injunction would become part of the record and could be considered by the court in deciding whether to grant the permanent injunction. Prinz's first assignment of error is not well taken.

### ASSIGNMENT OF ERROR II

"The trial court erred as a matter of law when it failed to fully enjoin appellee-Pesko in accordance with her employment agreement she has with appellant-Prinz."

Prinz assigns as error the failure of the trial court to enjoin Pesko from directly or indirectly working in a similar business to that of Prinz within Summit County or adjoining counties for a two-year period, as was set forth in the agreement. Pesko argues that because she signed the noncompetition agreement after she had been working for Prinz, it was not supported by consideration and therefore could not be enforced. In its decision, the trial court found that the noncompetition agreement was not supported by any new consideration. It then went on to decide that the agreement was overly restrictive and should be modified. We need not address the reasonableness of the restrictions placed upon Pesko's post-employment activities, for we agree with Pesko that the agreement was not supported by consideration.

A noncompetition agreement, like any other contract, must be supported by consideration. Adequate consideration is present where the restrictive covenant is entered into by the employee at the time the employee accepts employment. See *Cohen & Co.* v. *Messina* (1985), 24 Ohio App. 3d. 22, 25. In such a situation, a valid exchange of promises occurs: the employee promises not to compete upon termination of employment and the employer promises to hire the employee. Where the restrictive covenant was not agreed to by the employee upon his or her initial hire, it must be supported by something more than a promise of continued employment. *Morgan Lumber Sales Co.* v. *Toth* (C.P. 1974), 41 Ohio Misc. 17, 19.

In *Apronstrings, Inc.* v. *Tomaric* (August 7, 1987), Lake App. No. 11-272, unreported, the appellee was employed with a home cleaning service for four months when she quit and began working for a former customer of the appellant. The appellant sought enforcement of a restrictive covenant signed by the appellee two weeks after she was hired by the appellant. The trial court denied the appellant's application for a permanent injunction and the appellate court affirmed. The court reasoned that:

"* * *.
"It is axiomatic that covenants of noncompetition must be supported by valuable consideration before they will be enforced. See *Lange* v. *Werk* (1853), 2 Ohio St. 520. Since agreements of this nature are frequently the result of unequal bargaining power, one consideration beyond a mere promise of continued employment must be provided by an employer.* * *."

A similar result was reached when an accountant who had been working for an accounting firm for a number of years entered into a nonsolicitation agreement. She did not receive an increase in salary or any additional consideration for entering the agreement. The court held that continued employment was not sufficient consideration and that the nonsolicitation agreement was unenforceable. *Burnham* v. *Digman* (July 21, 1986), Licking App. No. CA-3185, unreported.

On the other hand, when the employer gives the employee some type of inducement to agree to the restriction placed upon him, the courts have found a restrictive covenant to be supported by consideration. For example in *Toledo Clutch & Brake Service, Inc.* v. *Childers* (Feb. 28, 1986), Lucas App. No. L-85-069, the court upheld a covenant not to compete that was entered into by an employee in exchange for the employer's promise to pay him seventy-five percent of his salary upon termination if he could not find a position in a new job or in a different field. In *Columbus Medical Equip. Co.* v. *Watters* (1983), 13 Ohio App. 3d 149, the court found that a noncompetition clause was enforceable where, in return for signing an employment agreement containing the noncompetition clause, the employee received an increase in salary along with other job-related privileges.

In the instant case, we need not look any further than the four corners of the contract in deciding what, if any, consideration was

present. After working for Prinz for approximately five months, Pesko signed the agreement, which clearly provided that she would be permitted to continue working for Prinz in return for agreeing to enter into the restrictive covenant.

"* * *.

"In consideration of her continued employment and training by Prinz Office Equipment Company, the employee agrees."

Paul Prinz's testimony underscores the plain language of the contract:

"* * *.

"Q. She got to keep the job that she had, correct?
"A. Yes.
"Q. And that's all she got, she got to keep the job she had?
"A. Yes, that's correct."
"* * *."

As set forth in the preceding cases, Ohio does not recognize continued employment as valid consideration, and a noncompetition agreement based upon continued employment is unenforceable.

From our review of the record and applicable case law, we hold that the noncompetition agreement signed by Pesko is unenforceable, for it is not supported by legal consideration. Pesko argues the unenforceability of the agreement in response to Prinz's claim that the trial court erred by not enforcing the noncompetition agreement as originally drafted. She does not affirmatively assert it as a reason for this court to vacate the modified injunction. Thus, we accept the validity of Pesko's argument in the defensive posture in which it was offered and affirm the trial court's decision.

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).

REECE, J., CIRIGLIANO, J., Concur.

[1] There seems to have been some confusion in the lower court as to whether the February 24th hearing was one for a temporary restraining order (TRO) or a preliminary injunction. Apparently, the court and the parties mistakenly spoke of a TRO when they meant preliminary injunction. An application for a TRO is usually ex parte and an order granting it is limited to fourteen days. Where both parties are present and participate at the hearing, the application can be treated as one for a preliminary injunction. Turoff v. Stefanac (1984), 16 Ohio App. 3d 227, 228. Because both parties were present at the hearing and the order issued by the Court is labeled as a preliminary injunction, we deem that the initial hearing was held to decide the application for a preliminary injunction.